KATHRYN WANNER (Cal. Bar No. 269310)
Email:  wannerk@sec.gov
MARISA G. WESTERVELT (Cal. Bar No. 217172)
Email:  westerveltm@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Katharine Zoladz, Co-Acting Regional Director
Gary Leung, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>JOHNNY TSENG (a/k/a Kuanhao J. Tseng, Kuanhao Tseng), KEVIN ZHANG (a/k/a Kevin Huapeng Zhang, Huapeng Zhang), and SUMMITCREST CAPITAL, INC.,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1),

1

78u(d)(3)(A), 78u(e) & 78aa(a).

2. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a) because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because defendants Johnny Tseng, a/k/a Kuanhao J. Tseng, Kuanhao Tseng ("Tseng") and Kevin Zhang, a/k/a Kevin Huapeng Zhang, Huapeng Zhang ("Zhang") reside in this district and defendant Summitcrest Capital, Inc. ("Summitcrest") has its principal place of business here.

## SUMMARY

4. Defendants orchestrated an affinity offering fraud in connection with an unregistered offering for SC Development Fund, LLC, f/k/a SC Development Fund V, LLC ("SCDF"), a real estate investment fund that raised approximately $19.8 million from about 30 investors in the United States and China during the period from approximately February 2018 to November 2019.

5. Tseng, a California real estate broker, and Zhang, a California real estate developer, managed SCDF through Summitcrest, which they co-owned.

6. The SCDF private placement memoranda ("PPM") for the SCDF offering claimed that investor funds would be to make loans to the "general public."

7. However, contrary to the representations in the SCDF PPM, Defendants actually used SCDF investor funds to make loans *exclusively* to Zhang's real estate development and contracting business, and other real estate development entities under Zhang's control, which ended in default in less than two years.

8. Defendants also transferred $200,000 of investor funds to another real estate investment fund controlled by Tseng and Zhang and paid purported "finder's fees" to two entities that were ostensibly third parties, but were actually controlled by Tseng and Zhang, respectively.

9. SCDF ultimately collapsed after the Zhang entities that had received loans from SCDF began to default on those loans.

10. SCDF then filed for bankruptcy in July of 2020 and is now defunct.

11. By this conduct, Defendants violated Sections 5(a), 5(c), and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

12. The SEC seeks permanent injunctions against future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5; conduct-based injunctions; disgorgement with prejudgment interest; and civil penalties against all Defendants. In addition, the SEC seeks officer and director bars as to Tseng and Zhang.

## THE DEFENDANTS

13. **Johnny Tseng, a/k/a Kuanhao J. Tseng, Kuanhao Tseng**, age 43, is a resident of Eastvale, California. Tseng owns 50% of the shares of SCDF's manager, Summitcrest. Tseng also is the principal of UBEST Capital, Inc. ("UBEST"), a Nevada corporation that received purported finder's fees from SCDF. UBEST is inactive and its Nevada state registration was revoked as of early 2021.

14. **Kevin Zhang, a/k/a Kevin Huapeng Zhang, Huapeng Zhang**, age 41, resides in Chino Hills, California. Zhang indirectly owns, through two other companies he controls, 50% of the shares of SCDF's manager, Summitcrest. Zhang is the founder and former president of Rockport Development, Inc., d/b/a Maestro Construction ("Rockport"), a California real estate development and contracting company, and the president and/or control person of each of the twelve other real estate development entities that received loans from SCDF (collectively, the "Zhang entities"). In addition, Zhang was the principal of Cloverleaf Associate

("Cloverleaf"), a Nevada corporation that received purported finder's fees from SCDF, and was dissolved in December 2019. After Rockport filed for Chapter 11 bankruptcy in May 2020, Zhang resigned as its president.

15. **Summitcrest Capital, Inc.**, is a California corporation with its principal place of business in Chino Hills, California. Summitcrest is co-owned by Tseng and Zhang and was the manager of SCDF. Summitcrest has never been registered with the Commission in any capacity.

## RELATED PARTY

16. **SC Development Fund, LLC, f/k/a SC Development Fund V, LLC**, was a California limited liability company with its principal place of business in Pasadena, California. SCDF has never been registered with the Commission in any capacity. SCDF filed for Chapter 7 bankruptcy in July 2020 and is now defunct.

## THE ALLEGATIONS

**A.    The SCDF Offering**

17. From approximately February 2018 to November 2019, SCDF offered and sold approximately $19.8 million in promissory notes to about 30 investors, including approximately 19 investors residing in the United States, and 11 investors residing in China.

18. The PPM offered up to $50 million in either membership units or promissory notes. Upon information and belief only promissory notes were sold to investors.

19. The PPM represented that investors who purchased membership units would receive a 12% annual preferred return, while investors who purchased promissory notes would receive interest at a fixed annual rate of 8% or 10% for investments under or over $100,000, respectively.

20. The promissory notes also would be due and payable in two to two and a half years.

21. The PPM described both the membership units and promissory notes as securities, explicitly stating that "[t]he Membership Units and [Promissory] Notes being sold in the offering are restricted securities under the Securities Act."

22. The PPM claimed that the offering was exempt from registration, stating "[SCDF] is offering the Membership Units and the [Promissory] Notes in reliance on exemptions from the registration requirements of the Securities Act and other applicable laws."

23. SCDF also filed a Form D Notice of Exempt Offering of Securities with the Commission on February 15, 2018, claiming a Regulation D, Rule 506(b) exemption from registration.

**B.     Solicitation of the SCDF Offering**

24. SCDF solicited investors from Chinese-speaking communities in the United States, and China.

25. The PPM was printed in English, with corresponding Mandarin Chinese translations included below each paragraph.

26. SCDF paid purported finder's fees of $60,000 to Tseng's entity UBEST, and purported finder's fees of $112,100 to Zhang's entity Cloverleaf, for bringing in investors from the United States and China.

27. Tseng and Zhang also enlisted one of Zhang's salaried Rockport employees, who was a Chinese immigrant, to recruit prospective investors from the local Chinese immigrant community.

28. In addition, Summitcrest held at least one in-person seminar for Chinese-speaking real estate agents and insurance agents; at least one of the seminar attendees referred a client who became an investor in SCDF.

29. The subscription agreements for the SCDF offering sought information from investors residing in the United States as to whether they met the requirements for "accredited investors" under Regulation D.

30. SCDF relied upon investors' own representations as to whether they met the accreditation requirements under Regulation D.

### C. SCDF's Use of Investor Funds

31. All of the known SCDF investors purchased promissory notes rather than membership units.

32. SCDF investors received promissory notes that specified the principal amount, the interest rate and schedule for interest payments, and the maturity date.

33. SCDF investors mailed checks to SCDF or wired funds to one of two SCDF bank accounts controlled by Tseng and Zhang. Both Tseng and Zhang were signatories on these accounts.

34. The PPM represented that SCDF would use investor funds to make mortgage loans to the "general public."

35. These loans were expected to generate income from which SCDF would make the promised interest payments and return of capital to investors who purchased the promissory notes.

36. SCDF used approximately $18.7 million of investor funds to make sixteen real estate-related loans to Zhang's company Rockport and the Zhang entities. Each of these loans was secured by a deed of trust on real property located in Southern California.

37. SCDF also transferred $200,000 to Hillcrest Asset Based Fund I, LLC ("Hillcrest Fund"), another real estate investment fund controlled by Tseng and Zhang.

38. Transfers to Hillcrest Fund were not disclosed in the PPM as a possible use of investor funds.

39. In addition, SCDF used investor funds to pay fund expenses and to pay management fees to Summitcrest, as well as to pay purported finder's fees to Tseng and Zhang's entities, UBEST and Cloverleaf.

40. From approximately March 2018 through October 2019, SCDF made monthly interest payments to investors, totaling approximately $2.3 million.

41. In or around October 2019, Rockport and the Zhang entities began to default on the loans they had received from SCDF.

42. In or around May 2020, Rockport filed for Chapter 11 bankruptcy.

43. On or around November 21 or November 22, 2019, Summitcrest sent an email to SCDF investors which stated that SCDF had "recently been notified by certain borrowers of the fund related to Rockport Development, Inc. ("Borrower") that Borrower will be defaulting on its interest payments to [SCDF]" and that this would "negatively affect [SCDF]'s ability to make timely interest payments to its Note Holders."

44. After the November 2019 email to investors, SCDF stopped making monthly interest payments to investors.

45. SCDF filed for Chapter 7 bankruptcy on July 13, 2020. This bankruptcy proceeding closed on April 26, 2022, following the court-appointed trustee's determination that there were insufficient funds to administer, having collected just $26,231 on claims of about $19.5 million.

46. SCDF is now defunct.

**B.  Violations of the Antifraud Provisions**

    **1.  Misrepresentations Concerning SCDF's Business Model and Misuse of Investor Funds**

47. SCDF made misrepresentations to prospective investors concerning its business model and misused investor funds.

48. The PPM represented that SCDF's business model would involve assembling a portfolio of mortgage loans, which Tseng and Zhang would select from the general public.

49. Both the PPM cover page and the Summary of the Offering section located on the first few pages of the PPM stated clearly and prominently that SCDF

would engage in business as a mortgage lender for the purpose of making and acquiring loans "*to the general public*" (emphasis added).

50. In reality, Defendants conducted SCDF's business in a manner that was completely opposite to that described in the PPM. Rather than make loans to the general public, SCDF made loans *exclusively* to entities affiliated with Zhang.

51. Specifically, SCDF made sixteen loans, four of which were loans to Zhang's company Rockport, and twelve of which were loans to the Zhang entities.

52. The loans that SCDF made to Rockport and the Zhang entities went into default in less than two years, leaving SCDF without the means to pay the remaining promised interest payments and return of capital to its investors.

53. These business practices resulted in SCDF's bankruptcy and SCDF investors' loss of their investments.

54. SCDF also misused investor funds by transferring $200,000 to Hillcrest Fund, another real estate investment fund controlled by Tseng and Zhang. This use of funds was not disclosed in the PPM.

### 2. Misrepresentations Concerning Payment of Finder's Fees to Third Parties and Additional Misuse of Investor Funds

55. SCDF also made misrepresentations to prospective investors concerning its payment of finder's fees to third parties and again misused investor funds.

56. The PPM represented that SCDF membership units and promissory notes would be offered and sold by SCDF.

57. The PPM also represented that Summitcrest, as manager of SCDF, "may retain the services of independent third parties to locate prospective Investors, who may receive LLC paid finder fees on a case-by-case basis" and that "[u]p to 2% in finder's fees may be paid to third parties."

58. Tseng and Zhang had SCDF pay finder's fees to entities that were ostensibly third parties, but were in fact companies under their control, not independent third parties.

59. Specifically, during the period from approximately March 2018 through December 2018, SCDF paid finder's fees of approximately $60,000 to UBEST, which was controlled by Tseng, and finder's fees of approximately $112,100 to Cloverleaf, which was controlled by Zhang.

60. UBEST and Cloverleaf submitted invoices to SCDF for finder's fees and received payment on those invoices.

61. Tseng and Zhang thus hid behind the corporate veneers of UBEST and Cloverleaf, respectively, in order to misappropriate finder's fees for themselves.

C. **The Misrepresentations and Misuse of Investor Funds were Material**

62. SCDF's false and misleading statements and the misuse of investor funds were material.

63. A reasonable investor would have considered it important to know that their investments would be used to make mortgage loans that were not made "to the general public," as had been represented to them, but exclusively to Zhang's company Rockport and the Zhang entities.

64. A reasonable investor also would have considered it important to know that their investments would be used to pay finder's fees that were not paid to independent third parties, as had been represented to them, but to entities controlled by Tseng and Zhang, respectively.

65. In addition, a reasonable investor would have considered it important to know that their funds were not used as described in the PPM, but that $200,000 in investor money was transferred to Hillcrest Fund.

66. Because Tseng and Zhang controlled SCDF through Summitcrest, which was the manager of SCDF with absolute authority over the business of SCDF, the Defendants had ultimate authority over the false statements.

### D. Defendants Acted with Scienter

67. As co-owners of Summitcrest, which was the manager of SCDF with absolute authority over the business of SCDF, and as signatories on SCDF's bank accounts, Tseng and Zhang knew, or were reckless in not knowing, that despite the disclosures in the PPM, SCDF was actually only making loans only to Zhang's company Rockport and the Zhang entities, paying finder's fees to their own companies, and transferring funds to their Hillcrest Fund.

68. Tseng and Zhang's scienter is attributable to Summitcrest because they controlled it.

### E. Defendants Obtained Money By Means of the Misrepresentations

69. Defendants obtained money directly by means of the misrepresentations because SCDF paid finder's fees to Tseng and Zhang's entities, UBEST and Cloverleaf, and paid management fees to Summitcrest.

70. Tseng and Zhang also were the principals of SCDF and Summitcrest, and therefore obtained money through these entities.

### F. Registration Violations: Sections 5(a) and 5(c) of the Securities Act

71. SCDF offered and sold securities, raising approximately $19.8 million from about 30 investors in the United States and China from approximately February 2018 to November 2019.

72. The SCDF offering was never registered with the SEC.

73. The SCDF securities were offered and sold through interstate commerce, including through the mail and bank wire transfers.

74. The SCDF offering was not exempt from registration.

75. SCDF, as the issuer of the securities, directly offered and sold securities through general solicitation, including an in-person seminar for Chinese speaking real estate agents and insurance agents.

76. SCDF offered and sold securities to investors residing outside of California and the United States.

77. SCDF did not take reasonable steps to verify whether investors residing in the United States were accredited.

78. SCDF, as the issuer of the securities, directly offered and sold securities through a general solicitation, raising approximately $19.8 million by marketing the offering to investors.

79. Tseng and Zhang are liable for SCDF's offer and sale of securities because they controlled SCDF through Summitcrest, which was the manager of SCDF with absolute authority over the business of SCDF.

## FIRST CLAIM FOR RELIEF

### Fraud in Connection with the Purchase or Sale of Securities

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (Against All Defendants)

80. The SEC realleges and incorporates by reference paragraphs 1 through 79 above.

81. In connection with the purchase or sale of securities, Defendants engaged in a scheme to defraud and made material misrepresentations to investors. These included statements to potential investors that SCDF would use their funds to make loans to "the general public[.]"  Although SCDF did fund real estate loans, not a single loan was to the general public; rather, all of the loans were to companies affiliated with Zhang or under Zhang's control.  Defendants also used investor funds to pay purported finder's fees to entities controlled by Tseng and Zhang, while claiming in the offering documents that finder's fees would be paid to third parties.  Finally, Defendants misused investor funds by transferring money to another investment fund without disclosing that potential use of funds to investors.

82. Because Defendants controlled SCDF, Defendants are the makers of these material misrepresentations and/or omissions.

83. By engaging in the conduct described above, Defendants, and each of them, directly or indirectly, in connection with the purchase or sale of a security, and

1  by the use of means or instrumentalities of interstate commerce, of the mails, or of
2  the facilities of a national securities exchange: (a) employed devices, schemes, or
3  artifices to defraud; (b) made untrue statements of a material fact or omitted to state a
4  material fact necessary in order to make the statements made, in the light of the
5  circumstances under which they were made, not misleading; or (c) engaged in acts,
6  practices, or courses of business which operated or would operate as a fraud or deceit
7  upon other persons.

8    84. Summitcrest acted through Tseng and/or Zhang. Therefore, Tseng's and
9  Zhang's knowledge, recklessness, and/or negligence may be imputed to Summitcrest.

10   85. Defendants, with scienter, employed devices, schemes, or artifices to
11 defraud; made untrue statements of material facts or omitted to state material facts
12 necessary in order to make the statements mad, in the light of the circumstances
13 under which they were made, not misleading; and engaged in acts, practices, or
14 courses of business which operated or would operate as a fraud or deceit upon other
15 persons, including purchasers and sellers of securities by the conduct described in
16 detail above.

17   86. By engaging in the conduct described above, Defendants each violated,
18 and unless restrained and enjoined will continue to violate, Section 10(b) of the
19 Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities**

**Violations of Sections 17(a) of the Securities Act**

**(Against All Defendants)**

24   87. The SEC realleges and incorporates by reference paragraphs 1 through
25 79 above.

26   88. In connection with the purchase or sale of securities, Defendants
27 engaged in a scheme to defraud and made material misrepresentations to investors.
28 These included statements to potential investors that SCDF would use their funds to

make loans to "the general public[.]"  Although SCDF did fund real estate loans, not a single loan was to the general public; rather, all of the loans were to companies affiliated with Zhang or under Zhang's control.  Defendants also used investor funds to pay purported finder's fees to entities controlled by Tseng and Zhang, while claiming in the offering documents that finder's fees would be paid to third parties.  Finally, Defendants misused investor funds by transferring money to another investment fund without disclosing that potential use of funds to investors.

89. By engaging in the conduct described above, Defendants, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

90. Summitcrest acted through Tseng and/or Zhang.  Therefore, Tseng's and Zhang's knowledge, recklessness, and/or negligence may be imputed to Summitcrest.

91. Defendants, with scienter, employed devices, schemes, or artifices to defraud; and Defendants, with scienter or negligence, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

92. Defendants obtained money directly by means of the misrepresentations because SCDF paid finder's fees to Tseng and Zhang's companies and paid management fees to Summitcrest.  Tseng and Zhang were the principals of SCDF and

Summitcrest, and therefore obtained money through these entities.

93. By engaging in the conduct described above, Defendants each violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## THIRD CLAIM FOR RELIEF

### Unregistered Offer and Sale of Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

### (Against All Defendants)

94. The SEC realleges and incorporates by reference paragraphs 1 through 79 above.

95. SCDF's offer and sale of securities was not registered with the SEC and the securities were offered and sold through interstate commerce. There was no registration statement in effect or filed with the SEC with respect to the offering.

96. No exemption applies to SCDF's offer and sale of securities. SCDF engaged in general solicitation, including an in-person seminar for Chinese-speaking real estate and insurance agents. In addition, SCDF failed to take reasonable steps to verify whether investors actually qualified as accredited investors, relying instead upon investors' own representations as to whether they met the applicable requirements. SCDF also sold notes to investors residing outside of California and the United States.

97. Defendants are liable under Section 5 of the Securities Act for SCDF's offer and sale of securities because Tseng and Zhang controlled SCDF through Summitcrest, which was the manager of SCDF with absolute authority over the business of SCDF.

98. By engaging in the conduct described above, Defendants, and each of them, directly or indirectly, singly and in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through

the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

99. By engaging in the conduct described above, Defendants each violated, and unless restrained and enjoined, will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c).

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### III.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], permanently enjoining Defendants and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, from, directly or indirectly, including, but not limited to, through any

entity owned or controlled by Defendants, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Tseng or Zhang from purchasing or selling securities for their own personal account.

### IV.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] and/or Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], prohibiting Defendants Tseng and Zhang from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

### V.

Order Defendants to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)].

### VI.

Order Defendants to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VIII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  July 28, 2023

/s/ *Kathryn Wanner*
Kathryn Wanner
Marisa G. Westervelt
Attorney for Plaintiff
Securities and Exchange Commission